## THE NEW JERSEY RAILROAD COMPANY ADS. JAMES J. PALMER.

1. The plaintiff was a passenger on the defendants' steam ferry and railroad from New York to Newark, by the 10 o'clock P. M. boat. The boat had come up close to the bridge on the Jersey City side, and had been fastened by the chains to the bridge, and the front chains on the boat had been let down, and the plaintiff was in the act of stepping from the boat to the shore, in the immediate rear of the other passengers when his foot was caught between the boat and the bridge, and badly crushed. *Held,* that the plaintiff was not guilty of want of ordinary care, although at the very instant of stepping from the boat to the bridge he did not examine particularly to see if there was a vacant space between the boat and the bridge.
2. *Held, also,* that a verdict of $2500 damages was not so excessive as that the court would set aside the verdict.

In case. On verdict for plaintiff, and rule to show cause why new trial should not be had.

* Argued before the CHIEF JUSTICE, and Justices ELMER, VREDENBURGH and WOODHULL.

The New Jersey Railroad Company ads. James J. Palmer.

For defendants, *I. W. Scudder*.

For plaintiff, *C. H. Winfield.*

The opinion of the court was delivered by

VREDENBURGH, J. The plaintiff, on the 6th of November, 1865, about 10 o'clock P. M., was crossing in the defendants' ferry boat from Cortlandt street, New York, to Jersey City, on his trip by way of the defendants' railroad to Newark, New Jersey.

The boat had come close up to the bridge, on the Jersey City side, the guard chains had been put down, and the plaintiff, in the immediate rear of the other passengers, was in the act of passing from the boat to the bridge, when, from some cause, his foot was caught between the boat and the bridge, injuring his foot, and so crushing three of his toes as to make their amputation necessary.

There was a space of between eight and ten inches between the boat and the bridge.

There is no intimation that this space between the boat and the bridge might not have been avoided by due care on the part of the defendants.

The defendants, however, insist that the plaintiff, by his own want of care, contributed to the accident.

Before the plaintiff commenced to walk off the boat it had come up close to the bridge, the chains from the bridge to the boat had been fastened on, and the chains *across* the boat in front had been let down, and all the usual signals given to the passengers that the passage way was safe, and that the usual precautions had been taken for their safety. The plaintiff then moved and went off the boat in the rear of the other passengers, the others passed safely, his foot was caught between the boat and the bridge. The only proof from which any negligence on the part of the plaintiff is inferred is this remark in his own evidence, made on cross-examination, as follows, viz., "Up to the time my foot was hurt I did not take any notice of anything ; I paid no attention to anything ;

after that my foot was hurt, I was in such pain I took very little notice of anything." By this I do not understand the plaintiff to say that literally he took no notice of anything. For he does say that he noticed that the boat had come to the bridge, that the chains were fastened, that the chains in front had been let down, that the other passengers had passed off safely, and that he was passing off immediately in their rear, and that the defendants had given the usual signals to pass off. The expression is also to be taken with the last clause of the sentence ; he says, after that my foot was hurt I was in such pain I took very little notice of anything. In the agony of the moment it is not likely that he would remember accurately what he was doing the moment before. Sudden and extreme pain drives from the memory what immediately preceded it, to a greater or less extent. He may, I think, fairly be deemed to say that he was passing off the boat as people usually pass off in such circumstances ; that he was paying no particular attention to see if the boat was close up to the dock; that he was paying the usual instinctive care people take of themselves, and that he did not use the language in its strict literal sense. It is evident from what he does tell us he in fact did do, that he could not have used the expression in its strict literal sense, and that if he had so intended to say, that it was not in fact literally true. But suppose that to be so, was it, under the circumstances, want of due care on the part of the plaintiff? did the plaintiff not use the ordinary care which passengers use in passing off of this ferry boat?

Did he not wait till the boat got close to the bridge ? did he not wait till he heard the boat was fastened to the bridge by the ordinary chains ? did he not wait till the guard chains in front of the boat were let down, and thus got the signal from the defendants' agents that there was no space through which he could be caught between the boat and the bridge ? and did he not wait till he saw all the other passengers pass over safely, and then follow in their rear ? When the defendants took down the guard chains at night, was it not

saying to the plaintiff, in most unmistakable language, "pass on," "the boat is close to the bridge," "there is no danger." What is the ordinary care taken by passengers under such circumstances?

We cannot ignore the crowds passing continually night and day over these ferries. After the guard chains are down do they not ordinarily pass in crowds of thousands and tens of thousands, with a rush, from the boat to the bridge without giving a thought as to the condition of the bridge and boat? If any cautious passenger should wish to stop to examine, he probably would not be able to see his feet from the pressure of the crowd. Is every passenger, in thus passing from the boat to the bridge, to stop the hurrying and impatient crowd until, in the uncertain lamp light on the dim eye-sight of age, he can feel with his cane whether the boat has been carefully fastened to the bridge or not? That would be not ordinary, but extraordinary care. Such care as not one in ten thousand takes, of those who habitually cross these ferries. The plaintiff had a ticket from New York to Newark by the defendants' ferry boat and railroad, and the defendants were as much guilty of negligence in leaving a space between the boat and the bridge as they would have been in leaving a rail out in their railroad. The defendants were bound by their duty to their passengers to make the way from their boat to their railroad safe, as much as the corporation of New York has to make Broadway safe, and the plaintiff was no more bound to stop and feel or look to see if the space was closed between the boat and the bridge than a person in Broadway is to stop and feel with his cane as he passes up with the crowd at night, whether, in the uncertain light, he may not be stepping into a sewer. To assume, under such circumstances, that there is no open sewer across the walk in Broadway, is not want of due care; nor was it any want of due care in this plaintiff, on this occasion to assume that there was no yawning chasm ready to engulph him between the boat and the bridge. The plaintiff had a right to assume, without being chargeable with the

want of ordinary care, that the defendants had done what they had just assured him, by taking down the guard chains, that they had done, and that the boat and the bridge were in their usual relation.

But the defendants contend that this injury was done, not by the plaintiff's foot getting between the boat and the bridge, but by his toes getting caught under the toggle. I do not think that such is the weight of the evidence. But even if it was, it does not mend the matter. It was then a trap which could be guarded against only by the most extraordinary care.

Another point is, that the damages were too high. The plaintiff lost three of his toes by the accident. The jury thought twenty-five hundred dollars not too high a price for them. Nor am I so satisfied that it was too much, that I would feel justified in interfering with the verdict. We all know that almost everything has risen in value very much within the last few years.

I think the rule to show cause should be discharged.

BEASLEY, CHIEF JUSTICE. I have not been without hesitation in concurring in the result to which my brethren have come in this case. My scruple was with regard to the question whether the plaintiff, by his own neglect, did not contribute to bring about the casualty by which he was injured. His own statement, rendered as a witness for himself at the trial, as to the condition of things, and as to his own conduct in passing from the boat at the time of the accident, was this: " There was no light on the side—not on the right hand side; a very dim light on the left hand side; up to the time my foot was hurt, I did not take any notice of any thing; I paid no attention to any thing after that my foot was hurt; I was in such pain I took very little notice of any thing." This evidence, literally taken, signifies that the plaintiff, in going from the boat to the dock, made no use whatever of his eye-sight. For all the purposes of self-protection he might as well have been blindfolded; and if

there had been a space of a yard between the boat and the wharf, he would have walked into the water. It seems to me such an act cannot be said to be characterized by ordinary prudence. The place of this accident must, in the nature of things, be a place of some danger. A slight omission of care on the part of the agents of the ferry company—a slight derangement in the machinery necessary to secure the boat—and the passenger at this point is exposed to hazard. As neither the vigilance nor the contrivances of man can be invariably relied on, when the safety of the person has no better guarantees, I think a necessity in all such cases exists for the exercise of some degree of caution. But my brethren do not understand the evidence in this literal sense. In their interpretation of it, it means that the plaintiff did not pay any particular attention to the place of the accident. Receiving the expressions used in the import that ordinary, though not unusual care was given by the plaintiff to his movements at the time in question, I feel myself at liberty to concur in the result which the other members of the court have reached.

Rule to show cause discharged.